UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re INVESTIGATIVE SUBPOENA DIRECTED TOWARD FIFTH THIRD BANK AND CITIBANK,<br><br>Issued by<br>UNITED STATES COMMODITY FUTURES TRADING COMMISSION,<br>Three Lafayette Centre<br>1155 21st Street, N.W.<br>Washington, D.C. 20581<br><br>            Applicant. | **FILED UNDER SEAL**<br><br>Miscellaneous No. |

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR *EX PARTE* ORDER TO DELAY NOTICE OF INVESTIGATIVE SUBPOENAS PURSUANT 12 U.S.C. § 3409

COMES NOW, the Applicant United States Commodity Futures Trading Commission ("the Commission"), by and through the undersigned counsel, submits this memorandum of law in support of its Application for *Ex Parte* Order to Delay Notice of Investigative Subpoena ("Application"), pursuant to 12 U.S.C. § 3409 (2012), delaying the notice that is required under the Right to Financial Privacy Act, 12 U.S.C. §§ 3401-3422 (2012) ("RFPA"), to a bank customer whose financial records the Commission seeks through investigative subpoenas ("Subpoenas"), attached herein. In support of its cause, based upon credible information and belief, the Commission states as follows:

### BACKGROUND

1. The Commission is presently investigating Randall James Rye ("Rye") for potential violations of the Commodity Exchange Act, Pub. L. No. 74-675, 49 Stat. 1491 (1936) (codified

as amended at 7 U.S.C. §§ 1-25 (2012)) ("the Act"), and regulations promulgated thereunder ("Regulations") in connection with his activities in trading commodity futures contracts.

2. The Commission has received credible information that, from at least September 1, 2015 through at least January 11, 2017 ("Relevant Period"), Rye fraudulently solicited and/or received at least $1 million from customers for trading commodity futures contracts ("futures") and options on futures ("options") via Rye's company Faster Than Light Trading LLC ("Faster Than Light").

3. Upon instruction from Rye, customers sent funds directly to Rye's personal and/or corporate Faster Than Light bank accounts. At least several customers were told by Rye that they would have individual trading accounts, received purported trading account statements, and/or signed trading authorization forms. The trading authorization forms represented Rye would control the futures and options trading on behalf of those customer's specific trading accounts. In this purported structure Rye acted as an unregistered commodity trading advisor ("CTA").

4. In reality, Rye commingled and pooled customer funds in at least his personal and corporate Faster Than Light bank accounts at Fifth Third Bank and Citibank N.A. ("Citibank"). In pooling customer funds, Rye acted as an unregistered commodity pool operator ("CPO"). Contrary to his misrepresentations to customers, Rye used the customer funds in at least the corporate bank records on personal expenses for himself and possible Faster Than Light business expenses. Upon credible information, Rye likewise used the customer funds in his personal bank accounts for personal expenses and/or payments back to other customers.

5. Contrary to his representations to customers, no futures and options trading accounts were located in the name of, or opened, introduced, maintained, controlled, managed, handled, serviced, or owned by, or in any way affiliated with Faster Than Light at futures commissions

merchants ("FCMs"). The personal futures and options trading accounts located at FCMs in the name of Rye showed net trading losses for the period of January 2015 through January 2017.

6. During the Relevant Period, certain customers requested return of their investment funds. Rye made reimbursements to these customers using other customers' funds in a Ponzi-style scheme. To hide his losses, Rye sent fraudulent bank and futures trading account statements to customers. Based on these falsified and forged account statements as well as fraudulent statements made by Rye through phone calls and text messages, certain customers sent additional funds, which Rye promptly misappropriated on personal expenses.

7. Several customers asked for Rye to return their investments. Rye agreed to transfer funds to investors but failed to do so on multiple occasions. Rye continued to mislead investors through false statements and falsified bank records, at one point sending an electronically forged computer "screen shot" indicating Rye had approximately $38 million in the account. Based on credible sources, Rye never held that amount of money in any of his personal bank accounts. Based on the Fifth Third and Citibank corporate bank records, Faster Than Light never held $38 million as an account balance.

8. On or about February 13, 2017, Rye was arrested and charged with wire fraud in the Northern District of Illinois. Rye's bank accounts have not been frozen as of the filing of this Application. Rye is currently incarcerated, however, he has been provided with conditions of release which do not include a monetary bond. If Rye is able to comply with those conditions, he will be released.

9. Consequently, the Commission is investigating whether Rye engaged or is engaging in, among other things, the fraudulent solicitation of funds to trade futures and options, the misappropriation of those funds, and the issuance of false statements relating to his purported

trading, in violation of the Act and its Regulations, 7 U.S.C. §§ 6b(a)(1)(A)-(C) (2012) 6c(b), and 6o(1)(A) and (B) (2012), 17 C.F.R. §§ 33.10 (2016).

10. The Commission has learned that Rye held bank accounts in his name at Fifth Third Bank and Citibank during the Relevant Period. As part of its investigation, the Commission seeks to serve investigative Subpoenas on these financial institutions for Rye's bank records.

## ARGUMENT

### The Court Should Grant The Commission's Application To Delay Notice Of Its Investigative Subpoena

11. Under the RFPA, the Commission generally may not have access to or obtain copies of or information contained in the financial records of any customer from a financial institution unless the customer has authorized such disclosure or "such financial records are disclosed in response to an administrative subpoena or summons which meets the requirements of section 3405 [of the RFPA]." 12 U.S.C. § 3402(2) (2012).

12. Section 3405 of the RFPA generally requires, among other things, that if the Commission were to issue an investigative subpoena to a financial institution for a customer's personal financial records, the Commission would be required to notify that customer of the subpoena and wait fourteen days before obtaining any records in order to afford the customer an opportunity to quash the subpoena. *See* 12 U.S.C. §§ 3405 and 3410(a) (2012).

13. The RFPA, however, recognizes that notice of and an opportunity to move to quash an investigative subpoena for financial records may interfere with the government's legitimate investigative goals. Accordingly, Section 3409 of the RFPA provides a special procedure under which a government authority may obtain records pursuant to a subpoena while delaying notice of the subpoena to the individual for up to ninety days.

14. Upon application "made with reasonable specificity," this Court shall issue an *ex parte* order delaying customer notice of the Commission's investigative subpoenas for a period not to exceed ninety days if the Court finds that:

> (1) the investigation being conducted is within the lawful jurisdiction of the Government authority seeking the financial records;
>
> (2) there is reason to believe that the records being sought are relevant to a legitimate law enforcement inquiry; and
>
> (3) there is reason to believe that such notice will result in—
>
>> (A) endangering life or physical safety of any person;
>>
>> (B) flight from prosecution;
>>
>> (C) destruction of or tampering with evidence;
>>
>> (D) intimidation of potential witnesses; or
>>
>> (E) otherwise seriously jeopardizing an investigation or official proceeding or unduly delaying a trial or ongoing official proceeding to the same extent as the circumstances in the preceding subparagraphs.

RFPA § 3409(a). Each of these requirements is satisfied here.

15. First, the Commission has jurisdiction to conduct this investigation. The Commission has broad jurisdiction to conduct investigations "to ascertain the facts regarding the operations of . . . persons subject to the provisions of th[e] Act." 7 U.S.C. § 12(a)(1). The Division of Enforcement ("the Division"), on behalf of the Commission, has authority to conduct investigations "to determine whether any persons have violated, are violating, or are about to violate the provisions of [the Act], or the rules, regulations or orders adopted by the Commission pursuant to th[e] Act . . . ." 17 C.F.R. § 11.2(a) (2014). Further, the Division may issue subpoenas pursuant to its investigations "when authorized by order of the Commission." *Id.*

5

16. Here, the Commission has delegated authority to the Division to investigate commodity futures and options trading fraud generally and Rye's trading specifically. The Division is investigating whether Rye engaged or is engaging in, among other things, fraud, the misappropriation and mishandling of investor funds, and the issuance of false statements relating to his purported trading, all in violation of the Act. Accordingly, this investigation is well within the Commission's jurisdiction.

17. Second, the financial records that the Commission seeks are relevant to a legitimate law enforcement investigation. The Commission's investigation seeks to determine whether Rye has violated the law by committing fraud relating to his commodity futures and options trading activities. The financial records sought by the subpoena may: (a) identify any additional investors and the total amount of investor funds; (b) reveal whether investor funds were actually used to invest in futures contracts or were misappropriated; (c) identify any banks, FCMs, or other financial institutions to which investor funds were transferred; (d) identify other individuals who may have participated in Rye's fraudulent scheme; and (e) indicate whether Rye improperly commingled investor funds or otherwise mishandled those funds. Thus, there is reason to believe that Rye's financial records are relevant to this investigation.

18. Third, there is reason to believe that the required notice under the RFPA would result in the destruction of or tampering with evidence. Presently, the Commission has not notified Rye of its investigation into his commodity futures trading. Upon learning of this investigation, Rye will have the opportunity to destroy or tamper with books and records and any other documents evidencing fraud. Moreover, while Rye has been charged criminally for his actions related to this matter, his bank accounts have been neither frozen nor seized at the time of this filing.

Rye's agreement to comply with his conditions of release, which do not include a monetary bond, will provide Rye with the ability to access his bank accounts.

19. Providing Rye with notice of the Commission's investigation would also afford him time to disperse and secrete ill-gotten gains. Rye would have the opportunity to remove customer funds from the country, transfer funds to other domestic accounts, hide the funds in the form of cash or bearer bonds, or otherwise dissipate investor monies. Given that the Commission has received information from multiple customers and through a criminally filed affidavit that Rye has failed to refund customer investments, it is not mere speculation that Rye would misappropriate investor funds if he became aware of the Commission's investigation and were released on his bail conditions.

20. Further, there is reason to believe that the required notice under the RFPA will otherwise seriously jeopardize the Commission's investigation. The Act recognizes the risk that an individual engaging in fraud will take steps to destroy or tamper with evidence, and it offers a remedy. Under section 6c of the Act, 7 U.S.C. § 13a-1 (2012), at the same time Commission files an enforcement action it may obtain an *ex parte* restraining order freezing assets and prohibiting the defendant or other individuals from destroying, altering, or disposing of books, records, and other documents. Providing Rye with notice of the Commission's subpoenas for his financial records may result not only in the destruction and tampering of evidence but also in the dissipation of investor funds, thus rendering moot any *ex parte* restraining order that the Commission would otherwise seek from the Court.

## CONCLUSION

WHEREFORE, the Commission respectfully requests that the Court grant this application for an *ex parte* order delaying customer notice under the RFPA for a period of ninety days for the reasons stated above. A proposed Order is being submitted herewith.

Dated: March 15, 2017

Respectfully submitted,

_____
Alison B. Wilson
D.C. Bar No. 475992
Chief Trial Attorney
awilson@cftc.gov
(202) 418-5568

Dated: March 15, 2017

_____
Rishi K. Gupta
Massachusetts BBO No. 663782
Senior Trial Attorney
rgupta@cftc.gov
(202) 418-6773

U.S. Commodity Futures Trading Commission
Division of Enforcement
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581